IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>              Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST COMPANY,<br><br>              Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [46] MOTION TO DISMISS**<br><br>Case No. 2:15-cv-00758<br><br>District Judge David Nuffer |

Defendant Wilmington Trust Company moves[1] to dismiss all claims made in Sun Life Assurance Company's Second Amended Complaint.[2] The Complaint seeks declaratory relief that a life insurance policy is void. Sun Life responds in opposition.[3] Wilmington replies in support of its motion.[4]

Wilmington argues that Sun Life's claims are barred by an incontestability statute[5] while Sun Life argues that the insurance contract is void ab initio.[6] Because the incontestability statute bars the claims and the policy is not void *ab initio*, Wilmington's motion is GRANTED. Sun Life's claims are DISMISSED WITH PREJUDICE.

---

[1] Motion to Dismiss Claims in the Second Amended Complaint Against Defendant Wilmington Trust Company, (Motion), docket no. 46, filed April 29, 2016.

[2] Second Amended Complaint and Jury Demand, (Complaint), docket no. 35, filed March 24, 2016.

[3] Response of Sun Life Assurance Company of Canada to Wilmington Trust Company's Motion to Dismiss Claims, (Opposition), docket no. 49, filed June 17, 2016.

[4] Reply Memorandum in Support of Motion to Dismiss Claims Against Defendant Wilmington Trust Company, docket no. 52, riled July 18, 2016.

[5] Motion at 7.

[6] Opposition at 4.

**Table of Contents**

Background ........................................................................................................................ 2
Standard of Review .......................................................................................................... 5
Discussion ......................................................................................................................... 6
    1.      The Incontestability Statute Extinguishes the Claims. ......................................... 7
    2.      The policy is not void *ab initio*. ........................................................................... 7
           A.      The policy does not violate the Utah Constitution and is not invalidated by the requirement that there be an insurable interest. ................................... 8
           B.      Sun Life cannot have the policy declared void *ab initio* because of invalidity of the Trust. .............................................................................. 12
    3.      Barring Sun Life's Claims is Not an Endorsement of STOLI Schemes. .............. 15
Order ............................................................................................................................... 16

## BACKGROUND

On June 4, 2007, an application for a $6 million dollar universal life insurance policy on Florence Creer was received by Sun Life.[7] The application listed the 85-year-old Forence Creer as the insured, the Florence Creer Irrevocable Trust ("the Trust") as the owner and beneficiary of the policy, and Joseph E. Creer, Florence's husband, as the trustee.[8] It was represented that Florence Creer had a net worth of $7,895,000 and annual income of $300,000.[9] The initial premium payments of $115,335 were paid through Creer Industrial Park in early October 2008, with the actual monies coming from Steven Heinz, the broker who facilitated the Creer policy application.[10] Heinz in turn, was reimbursed for these monies by investors.[11] Sun Life issued the policy after the payments were received.[12]

---

[7] Complaint at 2.

[8] *Id.*

[9] *Id.* at 4.

[10] *Id.* at 6–7.

[11] *Id.*

[12] *Id.* at 7.

On November 29, 2007, the Trust was amended to name the Daily and Knudson Law Group, LLC, as the trustee instead of Joseph Creer.[13] Robert Creer was named as beneficiary of the Trust.[14] The remaining balance for the first year premiums of $346,005 was wired to Sun Life on December 31, 2007, from an unidentified source.[15] In July 2008, another $454,222 was received by Sun Life, again through wire payments from an unidentified source.[16] Sun Life asserts that all the monies used to pay the premiums for the Creer policy were in fact made with monies from investors.[17] Sun Life asserts that Private Equity Management Group, Inc. (PEM Group) was the investor group funding the Creer Policy from the beginning.

In April 2009, an action was brought by the United States Securities and Exchange Commission against the PEM Group and others who were allegedly engaged in the fraudulent offer and sale of securities including life insurance policies on the elderly.[18] The court supervising the PEM Group action froze the assets of the PEM Group and appointed a receiver.[19] The receiver was appointed to serve as trustee for all the life insurance policies and trusts associated with the PEM Group action, some 275 polices, which included the Creer Policy.[20]

Eventually, control of these policies was transferred back to the PEM Group where the investors still participating in the Trust chose Wilmington Trust to act as a securities intermediary.[21] In October 2011, Wilmington Trust was designated as both owner and

---

[13] *Id.*

[14] *Id.* at 8.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 9.

[19] *Id.* at

[20] *Id.* at 10.

[21] *Id.*

beneficiary of the Creer Policy.[22] Wilmington Trust has continued to administer the Creer Policy

since 2011. After the death of Florence Creer on August 31, 2015, Wilmington Trust submitted a

claim for the death benefit on the Creer Policy.[23] Sun Life performed a routine review of the

claim and learned from Florence Creer's son Edward that no member of the Creer family

provided any funds for the payment of premiums and that the Creer family could not have

afforded the policy.[24] Sun Life also received a copy of the 2007 Creer tax return which showed

total income for the year as $73,116.[25] Sun Life asserts that the Creer policy was always

controlled by investors, and created to give the appearance of a legitimate policy when in reality

it was just a sham policy set up for the benefit of investors.[26] These arrangements are often

referred to as Stranger Originated Life Insurance (STOLI) Schemes.

 Sun Life first filed a complaint on October 26, 2015.[27] Eventually, a second amended

complaint was filed March 24, 2016, setting forth three causes of actions.[28] Sun Life seeks a

declaratory judgement that the policy is void *ab initio* as an illegal wagering contract,[29] or in the

alternative a declaratory judgement that the policy is void *ab initio* for lacking an insurable

interest,[30] or a declaratory judgement that the policy is void *ab initio* because the Trust was

invalid and lacked the capacity to contract.[31] Wilmington moves to dismiss this complaint.[32]

---

[22] *Id.* at 11.

[23] *Id.* at 12.

[24] *Id.* at 12–13.

[25] *Id.* at 13.

[26] *Id.* at 13–14.

[27] Complaint and Jury Demand, docket no. 3, filed October 26, 2015.

[28] Complaint at 1.

[29] *Id.* at 17.

[30] *Id.* at 18.

[31] *Id.* at 19.

[32] Motion to Dismiss at 1.

## STANDARD OF REVIEW

Wilmington moves to dismiss Sun Life's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants are entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[33] When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts in the complaint is presumed, but courts need not consider conclusory allegations.[34] Nor are the complaint's legal conclusions and opinions accepted, whether or not they are couched as facts.[35] "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."[36]

The United States Supreme Court has held that satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[37] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[38]

---

[33] *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[34] *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[35] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[36] *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

[38] *Id.*

"[N]aked assertions devoid of further factual enhancement,"[39] do not state a claim sufficiently to survive a motion to dismiss.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[40] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[41] That is, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[42] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[43]

Measured against this legal standard, Sun Life's second amended complaint fails to state a claim for the reasons stated below.

## DISCUSSION

Sun Life's claims are barred by Utah's Incontestability Statute.[44] Sun Life's attempt to avoid the statute—arguing that for various reasons the life insurance policy is void *ab initio*—is meritless.

---

[39] *Id.*

[40] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

[41] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[42] *Robbins v. Oklahoma* 519 F.3d 1242, 1247–48 (10th Cir. 2008).

[43] *Id.* at 1248.

[44] Utah Code Ann. 1953 § 31A-22-403 (West 2016).

1. **The Incontestability Statute Extinguishes the Claims.**

Utah law states that after a life insurance policy has been in force two years, it is almost beyond challenge: "a life insurance policy is incontestable after the policy has been in force for a period of two years from the policy's date of issue."[45] There are limited exceptions.[46] None apply.

The policy was issued near the early part of October, 2007.[47] The complaint contesting the validity of the Creer policy was filed October 26, 2015. Because the incontestability statute cuts off the ability of Sun Life to contest the Creer policy after two years, Sun Life is barred from seeking to invalidate the policy. Sun Life is six years too late.

Sun Life could have investigated and contested the policy within the first two years. Indeed, it may have even had information alerting it to the need to investigate and contest the validity of the policy.[48] Yet, for whatever reason, it chose to do nothing other than continue receiving significant premium payments.

2. **The policy is not void *ab initio*.**

Sun Life attempts to avoid the incontestability statute by arguing that the policy was void *ab initio*.[49] If true, Sun Life argues, the incontestability statute would not apply. It would be as if the policy never existed.

---

[45] Utah Code Ann. 1953 § 31A-22-403(2)(a) (West 2016).

[46] Utah Code Ann. 1953 § 31A-22-403(3)(a–c) ("A life insurance policy described in Subsection (2) may be contested for nonpayment of premiums"; "A life insurance policy described in Subsection (2) may be contested as to . . . provisions relating to accident and health benefits allowed under Section 31A-22-609; and . . . additional benefits in the event of death by accident."; "If a life insurance policy described in Subsection (2) allows the insured, after the policy's issuance and for an additional premium, to obtain a death benefit that is larger than when the policy was originally issued, the payment of the additional increment of benefit is contestable.").

[47] Complaint at 7.

[48] Exhibit K to Complaint, docket no. 35-11, filed March 24, 2016 (SEC complaint against PEM Group, Inc.).

[49] Complaint at ¶¶ 67–79.

The policy is not void *ab initio* because the policy was not a wagering contract and because Sun Life's challenge of the validity of the Trust has no merit.

### A.  The policy does not violate the Utah Constitution and is not invalidated by the requirement that there be an insurable interest.[50]

The Utah Constitution states, "The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose."[51] In *Commercial Travelers' Ins. Co. v. Carlson*,[52] the Utah Supreme Court, interpreting the anti-gambling provision of the Utah Constitution, stated

> The almost universally accepted rule is that a party insuring a human life must have an insurable interest therein if the insurance is effected for his own benefit, or the policy will be void; and he must prove such interest in order to recover, since public policy does not permit one having no insurable interest to procure a policy of insurance upon the life of a human being, and pay the premiums as a speculation, or on a chance of collecting the insurance money.[53]

In other words, one person cannot make an insurance wager on the life of another unless that person has "an interest in having the insured life persist,"[54] i.e. an insurable interest. Without an insurable interest, it is unconstitutional gambling. As Justice Holmes said in *Grigsby v. Russell*,[55] "A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end."[56]

---

[50] Sun Life claims the analysis is different for the first and second causes of action (respectively, the policy is void because it is a wagering contract and the policy is void because of a lack of insurable interest). Opposition at 21–22. But the examples it provides of how there could be an insurable interest but still be an unconstitutional wagering contract are either factually distinct or just another way of saying there is no insurable interest. The two causes of action will be analyzed together.

[51] Utah Code Ann. 1953, Const. Art. 6, § 27 (West 2016).

[52] 137 P.2d 656 (Utah 1943).

[53] *Id.* at 659.

[54] *First PennPac. Life Ins. Co. v. Evans*, 313 F. App'x 633, 636 (4th Cir. 2009).

[55] 222 U.S. 149 (1911).

[56] *Id.* at 154.

Appropriately, Section 21-104 of the Insurance Code states, in part,

2(a) An insurer may not knowingly provide insurance to a person who does not have or expect to have an insurable interest in the subject of the insurance.
(b) A person may not knowingly procure, directly, by assignment, or otherwise, an interest in the proceeds of an insurance policy unless that person has or expects to have an insurable interest in the subject of the insurance.[57]

Yet Section 21-104 also states,

(6)(a) An insurance policy is not *invalid* because:
    (i) the insurance policy is issued or procured in violation of Subsection (2)[58]

The determinative question, then, is how does (6)(a) square with the Utah Constitution, *Carlson*, and general common law expressed in *Grigsby*?

Sun Life argues that 6(a) hinges on the difference between "knowingly" and "intentionally."[59] The acts prohibited in Subsection (2) are those taken "knowingly": "knowingly provide"[60] and "knowingly procure."[61] Sun Life argues that "[b]y including only knowledge and omitting any reference to intent in Subsection 2(b) of the Insurable Interest Statute, the Legislature manifested its view that intentional conduct falls outside this subsection [2(b)] and is treated differently."[62] Sun Life continues, "Because the strangers in this case *intentionally* originated the Policy without an insurable interest, the second scenario (set forth at Subsection 2(b)) did not occur."[63]

---

[57] Utah Code Ann. 1953 § 31A-21-104 (West 2007).

[58] *Id.* (emphasis added).

[59] Opposition at 16–21.

[60] Utah Code Ann. 1953 § 31A-21-104(2)(a) (West 2007).

[61] Utah Code Ann. 1953 § 31A-21-104(2)(b) (West 2007).

[62] Opposition at 17.

[63] *Id.* at 17–18.

Sun Life's argument is not persuasive. First, Sun Life fails to explain why the legislature would prohibit *knowing* conduct in 2(b) and ignore *intentional* conduct. The result of Sun Life's argument that 2(b) does not apply because the strangers acted *intentionally* in procuring a policy without an insurable interest also means that the saving provision of 6(a) does not apply and would allow Sun Life to claim the policy is invalid. While this explains Sun Life's argument, Sun Life does not explain why the legislature would make this distinction. Therefore, Sun Life's interpretation of Section 21-104 as excluding knowing conduct is not persuasive.

Second, it is not clear how Sun Life's distinction between "knowingly" and "intentionally" is consistent with Sun Life's arguments that the policy is void *ab initio* because the owner had no an insurable interest. The alleged constitutional and common-law concerns Sun Life raises when a policy is procured without an insurable interest are just as significant if someone *knowingly* originated a policy without an insurable interest as they would be if someone *intentionally* originated the policy without an insurable interest.

Sun Life summarized its argument that this policy is an illegal wagering contract: "[G]ambling is what a STOLI scheme is all about: investors fund a policy, knowing for certain that the insured will one day die, and taking the chance that this will happen quickly."[64] But how does a distinction between "knowingly" and "intentionally" fit with that policy statement? Even the arguably lower scienter of knowledge should—according to the rest of Sun Life's briefing—be in direct conflict with the Utah Constitution, *Carlson*, and the common law. Sun Life's distinction, therefore, does not satisfactorily explain how subsection 6(a), which precludes invalidating a policy because it was "issued or procured in violation of Subsection (2)," accords

---

[64] Opposition at 10.

with Sun Life's arguments that the Utah Constitution, *Carlson*, and the common-law prohibit gambling on another's life.

Finally, Sun Life's distinction between "knowingly" and "intentionally" is also not convincing because it is hard to imagine a scenario where one would procure an interest in the proceeds of an insurance policy intentionally but not knowingly. According to Sun Life, someone could validly procure the proceeds of an insurance policy negligently, recklessly, or knowingly, but not intentionally. For this argument, Sun Life relies on dictum in a footnote in *Derbidge v. Mut. Protective Ins. Co.*[65] Specifically, the *Derbidge* footnote states that "in the Insurance Fraud Act . . . the Legislature considers 'intent to deceive' and 'knowledge' to be distinct concepts, with the former in no way subsuming the latter."[66] This footnote dictum is not binding. And the footnote does not explain how intentionally buying a policy without an insurable interest would not also be done knowingly. This argument does not effectively explain how subsection 6(a)'s validation provision harmonizes with the Utah Constitution, *Carlson*, and the common-law prohibition against gambling on another's life. It is apparent that 6(a) represents a policy statement of validation weighing against the Utah Constitution, *Carlson,* and the common-law prohibition against gambling on another's life.

The Seventh Circuit offers a convincing explanation. In *Sun Life Assurance Co. of Canada v. U.S. Bank National Association*,[67] the court reconciled the common-law principle that you cannot "own an insurance policy on the life of a stranger";[68] Wisconsin's Constitution which states that "except as provided in this section, the [Wisconsin] legislature may not authorize

---

[65] 963 P.2d 788 (Utah Ct. App. 1998).

[66] *Id.* at 795 n.6.

[67] 839 F.3d 654 (7th Cir. 2016).

[68] *Id.* at 656.

gambling in any form";[69] and a Wisconsin statute, § 631.07(4), that states that "no insurance policy is invalid merely because the policyholder lacks insurable interest."[70]

The court held that there is nothing inconsistent between the three:

> [T]he legislature has not [authorized gambling] in . . . § 631.07(4), or anywhere else for that matter. Gambling contracts, including life insurance policies that lack an insurable interest, are still forbidden. The statute changed only the remedy for violation, from invalidation of the policy to requiring the insurer to cough up the proceeds [policy face amount] rather than—as Sun Life claims entitlement to—being allowed to keep all the premiums and pay nothing to the policy holder because the latter had no insurable interest in the policy.[71]

The Seventh Circuit's interpretation explains Utah's incontestability statute discussed above. The insurer has two years to investigate. If during those two years the insurer does little or no due diligence, then the legislature, in enacting Section 21-104, has not authorized gambling; it simply changed the remedy for violating the insurable interest requirement.

Finally, Judge Kimball's holding in *PHL Variable Insurance Company v. Sheldon Hathaway Family Insurance Trust*[72] did not address subsection 6 of Section 21-104. Thus, it is not persuasive.

Therefore, the policy is not void *ab initio* for failing to have an insurable interest; it is not void *ab initio* for being a wagering contract.

### B. Sun Life cannot have the policy declared void *ab initio* because of invalidity of the Trust.

Sun Life's third cause of action seeks a declaratory judgment that the Trust, which was the initial owner of the policy, "never came into existence and thus lacked capacity to apply for

---

[69] *Id.* at 657.

[70] *Id.* at 656.

[71] *Id.* at 657.

[72] No. 2:10-cv-67-DAK, 2011 WL 703839 (D. Utah Feb. 20, 2011).

or enter into the . . . Policy."[73] Wilmington argues that Sun Life "lacks standing to challenge the validity of the . . . Trust."[74]

Neither party provides convincing legal sources to support their arguments. Wilmington refers to a couple of non-binding federal cases.[75] And Sun Life refers to case law that says nothing about challenging the validity of a trust.[76] Wilmington also refers to several statutory provisions that seem to suggest that only settlors, trustees, and certain beneficiaries have standing to challenge the validity of a trust.[77] Sun Life does not address these statutory provisions.[78] Instead, Sun Life offers the following argument:

> There is no logical way to . . . conclude that Sun Life lacks standing to challenge the validity and capacity of the party with whom it initially contracted, and to suggest otherwise is like arguing that someone who contracts with a non-existent corporation could only challenge the corporation's existence and capacity if that person were also a shareholder, which makes no sense.[79]

Logical or not, the law before 2009 seems to have been that someone who contracts with a non-existent corporation could only challenge the corporation's existence and capacity if that person were also a shareholder. In 2009, the legislature added a provision to the Insurance Code that arguably—it is not certain whether it does—gives insurers standing to challenge the validity of a trust. It states

> (c)(i) A trust has an insurable interest in the subject of the insurance to the extent that all beneficiaries of the trust have an insurable interest.
> (ii) A trust violates this section if the trust:
>     (A) is created to give the appearance of an insurable interest, but an insurable interest does not exist; and

---

[73] Complaint ¶ 79.

[74] Motion at 18.

[75] *Id.* at 17–18.

[76] Opposition at 24–25.

[77] Motion at 18, n.15.

[78] Opposition at 24–25.

[79] Opposition at 24–25.

(B) is used to initiate a policy for an investor or other person who has no insurable interest in the insured.[80]

The policy in this case originated in 2007 when the provision above did not exist. Without this provision, Sun Life has no standing to challenge the trust. Sun Life makes the general assertion that as a party to the policy it has standing to challenge the Trust's capacity to contract. This is not convincing. Aside from failing to offer relevant case law, Sun Life does not acknowledge that it is attempting to make a collateral attack on a contract to which it was not a party. That is, Sun Life is not just attacking the policy it made with the Trust on the grounds that the Trust did not have capacity to enter into an agreement, it is necessarily arguing that the original parties *to the Trust* did not have capacity to enter into the Trust. The Trust was not the insured. Sun Life presumably made its actuarial calculations based on the life of the insured without considering the nature of the Trust. As the court in *West Coast Life Insurance Company v. Life Brokerage Partners LLC*[81] stated: "Entering into a contract with a trust is not enough to give [the insurer] the ability to challenge the validity of the trust itself."[82]

Finally, Sun Life's argument that the Trust is void and therefore the policy is void, hinges on allegations of fraud. But importantly, the incontestability statute's[83] limited exceptions for contesting a policy after the two-year statute of limitations do not include an exception for fraud. That is, the incontestability statute provides for contesting the policy after two years for "nonpayment of premiums,"[84] a "reinstated life insurance policy,"[85] "additional increment[s] of

---

[80] Utah Code Ann. § 31A-21-104(3)(c)(i–ii) (West 2016).

[81] No. 08-cv-80897-RYSKAMP/VITUNAC, 2010 WL 11426162 (S.D. Fla. May 24, 2010).

[82] *Id.* at *2.

[83] Utah Code Ann. 1953 § 31A-22-403.

[84] *Id.*

[85] *Id.*

benefit[s]," [86] and "additional benefits in the event of death by accident." [87] But it says nothing about contesting a policy because it was fraudulently obtained. By contrast, many other statutes within the Insurance Code do specifically mention fraud. [88] Not including fraud as a basis for contesting a policy after two years suggests that the legislature is interested in incentivizing insurance companies to investigate early and diligently and interested in finality.

### 3. Barring Sun Life's Claims is Not an Endorsement of STOLI Schemes.

In its Opposition, Sun Life warns that failure to sustain its claims would be a wholesale endorsement of STOLI schemes. [89] This is not correct.

Claims are routinely dismissed when, for instance, they are not filed timely. Courts in those instances are not endorsing the underlying alleged illegality. They are simply enforcing time bars put in place for important policy considerations.

Appropriate interests supported by incontestability statutes include the ability of insured parties to rely on policies without constant worry that an insurance company may at any future time contest the policy. The incontestability statute promotes prompt and thorough investigation of policy formation prior to or shortly after policy issuance. To invalidate polices long after the period of incontestability would give an insurance company a perverse incentive to reap windfalls by not challenging suspect policies up front so that the company may collect premiums indefinitely, and only later, after risks are fully quantified, allege illegality.

And, as stated by the 7th Circuit, there are important considerations for not invalidating a policy that potentially has no insurable interest. The legislature is within its right to limit the

---

[86] *Id.*

[87] *Id.*

[88] *See, e.g.*, Utah Code Ann. 1953 § 31A-22-609 (West 2016).

[89] Opposition at 20.

remedy for violating statutory provisions. In this case, the legislature makes the insurer responsible for failure to timely investigate.

**ORDER**

IT IS HEREBY ORDERED that the Motion to Dismiss Claims in the Second Amended Complaint Against Defendant Wilmington Trust Company[90] is GRANTED WITH PREJUDICE.

The clerk of the court is directed to CLOSE THIS CASE.

Dated March 13, 2017.

BY THE COURT:

David Nuffer
United States District Judge

---

[90] Docket no. 46, filed April 29, 2016.